## FAGAN & TREZEVANT vs. N. MISSOURI INS. CO.

BAILMENT: *Stranger receiving premiums on policies of insurance.*

Where premiums on policies of insurance are collected, and held by a third person, and the amount placed to the credit of the agent of the insurance company, the holder becomes the bailee of the company, and must account to it, or its agent, for the money so held; he cannot apply the same to a discharge of debts due him by the agent, or deliver it to the agent after his authority has ceased.

APPEAL from *Pulaski* Circuit Court.

Hon. JOHN WHYTOCK, Circuit Judge.

*Dodge & Johnson,* for appellant.

*Benjamin & Barnes,* for appellee.

HARRISON, J.:

Appellee sued appellants before a justice of the peace, on an account for money had and received to its use. From a judgment for the plaintiff the defendants appealed to the Circuit Court, where the plaintiff again obtained a verdict for the amount sued for $173.80. The defendants moved for a new trial, on the grounds of misdirection of the jury at the instance of the plaintiff; and the refusal to give proper instructions asked by the defendants, and that the verdict was not sustained by the evidence. Their motion was overruled, and they excepted and appealed to this court.

Thomas H. Jones, a witness for the plaintiff, testified:

That he was, in 1872, the plaintiff's agent in Little Rock; and having to leave the city for a time, in the summer or fall, he placed some of the plaintiff's blank policies, signed by himself as agent, in the hands of Steelman, to write up if occasion offered. He was absent about two months, and in the time of his absence Steelman wrote up the several policies mentioned in the account sued on, the premiums upon which amounted to $300 or $400. The policies were written up for the defendants, and they themselves collected most of the premiums. Steelman was absent when he returned, and the premiums having been deposited with the defendants, and placed to the plaintiff's credit on their books, he demanded them from them. They claimed that Steelman had deposited the money to his own credit, and he had drawn a considerable amount against it, and they denied any liability to the plaintiff. They finally offered to pay $100, as the amount which they supposed Steelman

still had in their hands; but he declined to receive that unless they paid the whole. The defendants put him off from day to day, until about the time Steelman returned, when they said they did not owe Steelman anything, having overpaid him, after crediting him with the premiums, and refused to pay the plaintiff anything.

J. T. Trezevant, Jr., one of the defendants, testified for defendants:

That in the fall of 1872, Steelman, an insurance broker, had a desk in the defendant's office. He informed defendants in September, that Mr. Jones, the plaintiff's agent, had left the city for a time, and had left several of the blank policies with him as a sub-agent to write up, if the opportunity presented. The defendants gave him several risks, amounting in premiums to $300 or $400. The premiums were mostly collected by the witness. Steelman having the premiums in defendants' possession was allowed to draw money as he wanted. The defendants had no connection with the plaintiff, but the account was kept in its name simply to keep it separate from Steelman's account proper, and so that his commissions might be easily and correctly kept.

The witness employed Steelman to take charge of a work on the Arkansas River, and he was absent two months. Before his return, Mr. Jones, plaintiff's agent, was anxious to get the money, and called on the witness to know when Steelman would return. The witness declined to turn over the premiums to him. A month afterwards, the witness, thinking it would be satisfactory to Steelman, told him he would turn over the money to him. The defendants' book-keeper did not get his books made up until after Christmas. In the meantime the witness offered Jones $100, which he declined to take unless he could get all. When the books were made up, Steelman had drawn more than the defendants had collected for him, and the witness then declined

to pay anything. Steelman paid part of the premiums to Jones, and reduced the amount due the plaintiff to $173.80, the sum sued for.

The first instruction given for the plaintiff, of which the appellants complain, was as follows:

"If the jury believe from the evidence, that the defendants collected the premiums mentioned in the account sued on, they must find for the plaintiff such sum, after allowing the credits, as had not been paid over."

We can perceive no objection to this instruction. The premiums belonged to the plaintiff, and when the defendants collected them, they became their bailees as to the amounts they received, and are bound to account to them for the same.

And the other instruction for the plaintiff, was as follows:

"If the defendants collected premiums, it was their duty to pay over the same to the plaintiff, or its agent (Jones), and they had no right to apply them to the payment of debts due by Steelman to them, unless directed by the plaintiff, or its agent—Jones.

It is too clear that the appellants could not appropriate the plaintiff's moneys in their hands, to the payment or discharge of Steelman's debts, but this instruction is susceptible of the construction that the defendants could not have paid them over to Steelman before they were demanded by Jones, and was calculated, if it stood alone to mislead the jury. An instruction given for the defendant as appears by the bill of exceptions, however, explains it, and the jury were informed that if Steelman, as the agent of the plaintiff, authorized the defendants to take out the risks charged in the account, and empowered them to collect the premiums; and he afterwards drew the same out of their hands, the defendants were discharged from their liability.

The instruction refused to be given for the defendants, was as follows:

"If Steelman was acting as agent of the plaintiff, by an appointment of Jones, plaintiff's agent in Little Rock, and he deposited the premiums with the defendants as bailees subject to his order, and the deposit was returned to him on his demand, the jury will find for the defendants.

This instruction was properly refused. The defendants knew that the premiums belonged to the plaintiff, and they could discharge themselves from liability, but by paying them over to plaintiff, and if they paid them to Steelman after his agency ceased, which the instruction assumes might have been done, they did so in their own wrong.

There was no want of evidence.

It is the province of the jury to weigh the evidence and ascertain the facts, and this court will never disturb their verdict on the mere weight of evidence.

Finding no error, the judgment of the court below is affirmed: